STATE EX REL. LEAGUE OF NEBRASKA MUNICIPALITIES, A CORPORATION, APPELLANT, v. LOUP RIVER PUBLIC POWER DISTRICT, A CORPORATION, ET AL., APPELLEES, CONSUMERS PUBLIC POWER DISTRICT, A CORPORATION, INTERVENER-APPELLEE.

62 N. W. 2d 682

Filed February 12, 1954.   No. 33423.

*Perry & Perry* and *W. W. Nuernberger,* for appellant.

*Walter, Albert & Leininger* and *Crosby & Crosby,* for appellees.

*Davis, Healey, Davies & Wilson,* for intervener-appellee.

Heard before Simmons, C. J., Carter, Messmore, Yeager, Chappell, Wenke, and Boslaugh, JJ.

Simmons, C. J.

In this action relator sought a peremptory writ of mandamus. The trial court denied the writ. Relator appeals. We affirm the judgment of the trial court.

In brief summary relator filed its petition seeking the writ on December 15, 1952. On the same day order to show cause was issued answerable December 29, 1952. On the latter date respondents answered. Relator demurred "for the reason that the Answer does not state any facts constituting a defense." The Consumers Public Power District filed a petition in intervention resisting the writ. The journal entry shows that oral objection was made to the intervention and no ruling thereon. On that day the trial court denied the peremptory writ of mandamus.

The court then took under consideration a motion of relator to make individual cities and villages "parties defendant" and a motion of the respondents for dismissal of the case. On April 10, 1953, the court denied the motion of relator, granted the motion of respondents, and dismissed the action.

On April 16, 1953, relator filed in one pleading a motion seeking to set aside the dismissal, a motion for trial on the merits, and a motion for a new trial. On May

7, 1953, this motion was overruled. Relator appeals.

The relator's assignments of error may be reduced to the contentions hereinafter considered.

Relator contends the court erred in reciting in its journal entry that a trial had been had whereas in truth no trial was had, but only an argument on questions of law, and that a trial on the merits should have been permitted. The journal entry shows that "said matter proceeded to trial to the Court" on December 29, 1952.

Relator further assigns error in that the court failed to permit it to appear and argue its demurrer. Among other things the journal entry shows a reference to a demurrer on behalf of relators, appearance by counsel for relators, and "said matter having been argued to the Court." There is nothing to indicate that argument was not had on the demurrer as a part of "said matter."

Relator further assigns error in the court's statement in the journal entry that the relator orally moved to make individual cities and villages "parties defendants" contending that the motion made was to make them "parties relator," and that the court erred in failing to grant the motion which relator here contends it made. The journal entries for December 29, 1952, and April 10, 1953, both refer to a motion to make the cities and villages parties defendant.

The relator further contends that the court erred in permitting and considering an oral motion for dismissal where "trial on the merits" had not been had.

The relator further contends that there was a stipulation made in open court in January 1953, that the cause should be continued without further decision pending negotiations of the parties, and that the court erred in ignoring that stipulation when it made its judgment of April 10, 1953. No journal entry of such a stipulation appears.

The transcript shows that after the journal entry herein referred to had been filed relator filed the pleading entitled a motion to set aside dismissal, for trial on

the merits, and for new trial. In this motion relator made all the contentions now urged in its assignments of error, including those hereinabove summarized. Concurrently with this motion was filed an affidavit of relator's counsel to the effect that no trial was had and that there had been a stipulation made with counsel for one of respondents that the matter be held in abeyance without decision pending negotiations for settlement. Subsequently there was filed an affidavit of the counsel for respondent that he had made no such stipulation.

On May 7, 1953, the trial court denied the motion. Subsequently there has been filed here an affidavit of the court reporter "that during the progress of said case, there was no testimony reported by me."

This appeal is here on the transcript without bill of exceptions as to any of the matters herein mentioned. The rule is: "Affidavits used in district court upon the hearing of a motion and not preserved in a bill of exceptions will not be considered on appeal." Wytoski v. Kiolbassa, 96 Neb. 173, 147 N. W. 126.

Obviously affidavits filed here cannot be considered under these circumstances.

In all appellate proceedings the record of the trial court imports absolute verity. Kennedy & Parsons Co. v. Schmidt, 152 Neb. 637, 42 N. W. 2d 191.

In Buck v. Zimmerman, 144 Neb. 719, 14 N. W. 2d 335, we had an appeal where there was no bill of exceptions. We there held: "Appellant contends that no evidence was taken and hence there was no evidence to make up a bill of exceptions. The order entered by the trial court plainly shows that a hearing was had and evidence taken. This court has held many times that the record imports absolute verity and it may not be disputed on appeal.

"On appeal, error will not be presumed, but must affirmatively appear from the record. First Nat. Bank v. Stockham, 59 Neb. 304, 80 N. W. 899. In the absence

of a bill of exceptions it will be presumed that issues of fact raised by the pleadings were supported by the evidence and that such issues were correctly determined. Backes v. Schlick, 82 Neb. 289, 117 N. W. 707. The evidence upon which the trial court acted not being before us, there is nothing for us to decide. It is a rule long established that a question requiring an examination of the evidence will be disregarded in the absence of a bill of exceptions preserving the evidence. Doolittle v. American Nat. Bank of Omaha, 58 Neb. 454, 78 N. W. 926."

In Reeker v. Reeker, 152 Neb. 390, 41 N. W. 2d 231, we held: "In this state of the record the rule that affidavits used in the district court upon the hearing of a motion and not preserved in a bill of exceptions will not be considered on appeal is applicable and the only conclusion that can be reached is that there has been no record presented which will permit of a review of the discretion exercised in this case by the trial court."

Under this state of the record and consistent with our holdings, the assignments above discussed cannot be sustained.

This brings us to relator's contention that the court erred in dismissing the action without first ruling on its demurrer to respondents' answer; and in failing to sustain the demurrer. The transcript does not show a ruling on the demurrer.

Section 25-2164, R. R. S. 1943, provides that in mandamus cases no other pleading or written allegation is allowed than the writ and answer.

In State ex rel. Glatfelter v. Hart, 106 Neb. 61, 182 N. W. 567, a demurrer to the writ was filed and sustained. We held that the demurrer was irregular, but was to be treated as an admission of the facts alleged in the writ. The relator's demurrer was obviously so considered by the trial court here for the journal entry refers to the petition and application of the relator, the filing of an answer by the respondents, "and issue having been joined

by filing of demurrer on behalf of" relator "said matter proceeded to trial." No objection appears to that construction of the demurrer. However, if it is to be treated as a demurrer in the usual sense, then the following rule applies:

Where no ruling is shown on a demurrer to a pleading and it appears that thereafter trial was had the demurrer will be held to have been waived. Foster's Admr. v. Gatewood, 314 Ky. 322, 235 S. W. 2d 764; Mc-Culley v. Ray (Ky.), 251 S. W. 2d 878; Peterson v. Fowler, 76 Mich. 258, 43 N. W. 10; Danielson v. Gude, 11 Colo. 87, 17 P. 283; White v. Turner, 114 Wash. 405, 195 P. 240; American Mortg. Co. of Scotland v. Inzer, 98 Ala. 608, 13 So. 507; Lahr v. Ulmer, 27 Ind. App. 107, 60 N. E. 1009; Devine v. Chicago City Ry. Co., 237 Ill. 278, 86 N. E. 689; Murphy v. Lincoln, 63 Vt. 278, 22 A. 418.

This brings us to relator's contention that the court erred in failing to grant a peremptory writ of mandamus. This assignment must be determined pursuant to the following rules:

"In the absence of a valid bill of exceptions, the only issue that can be considered on appeal is the sufficiency of the pleadings to sustain the judgment." Cozad v. McKeone, 149 Neb. 833, 32 N. W. 2d 760. See, also, Blake v. Pathfinder Hotel Co., 153 Neb. 231, 44 N. W. 2d 310.

"The court has no power by mandamus to control the decision of those matters which are left by statute to the discretion of the governing body of a governmental agency.

"A peremptory writ of mandamus should be issued only where the legal right to it is clearly shown." State ex rel. Strange v. School District, 150 Neb. 109, 33 N. W. 2d 358.

"Mandamus, while classed as a law action, is an extraordinary remedy, which is not awarded as a matter of right, but rests in the sound discretion of the court governed by equitable principles, and will not issue

when to do so would compel the doing of a substantial wrong." State ex rel. Heil v. Jakubowski, 151 Neb. 471, 38 N. W. 2d 26. See, also, State ex rel. Evans v. Brown, 152 Neb. 612, 41 N. W. 2d 862; State ex rel. Shineman v. Board of Education, 152 Neb. 644, 42 N. W. 2d 168; State ex rel. Bintz v. State Board of Examiners, 155 Neb. 99, 50 N. W. 2d 784.

The facts which we now recite are gleaned from the petition of the relator and the answer of respondents.

Relator is a nonprofit corporation organized under the provisions of Chapter 21, article 15, R. S. 1943. Its articles recite that its objects shall be the study of municipal problems and the general improvement of municipal government and its administration in this state through cooperative effort. By amendment adopted in 1952, its articles added as a means for advancing its purpose "To purchase, for re-sale to, or to purchase for and on behalf of, its member municipalities or any association of its member municipalities, electric power and energy from any supplier thereof, upon proper contracts of payment therefor from such member municipalities."

By resolutions adopted during November 1952, the cities of Cozad, Holdrege, North Platte, and Lincoln and the villages of Smithfield, Bertrand, and Loomis authorized and directed the relator to arrange for a contract to purchase electrical power and energy on their behalf from the respondents.

The respondents are corporations organized under the provisions of Chapter 70, article 6, R. R. S. 1943. The individual respondents are officers of the corporate respondents. The two corporate respondents operate in part as the Nebraska Public Power System.

Respondents have adopted a rate resolution which, among others, includes what is here referred to as an AO-1 rate schedule wherein the cost for power and energy is reduced as the consumption increases. The rate resolution defines customer as "any person, firm, asso-

ciation, or corporation, public or private, including Participating Customers, which purchases electric power and energy from the System." Relator contends that it comes within that definition and is entitled to purchase under the AO-1 rate schedule. For and on behalf of the named municipalities on November 20, 1952, it requested recognition and a contract for the purchase of power under the AO-1 rate schedule, the contract to include the cities and villages above named. The respondents refused to enter into the contract and this action followed.

Relator prayed for a peremptory writ of mandamus requiring the respondent to sell to the relator, on behalf of the cities and villages above named, or for resale to them of electrical power and energy in accordance with the AO-1 rate schedule.

The obvious purpose of the procedure here undertaken is to secure a lower ultimate rate for the villages and cities named than they are able to get under individual separate contracts. The relator states here that it proposes to operate as a group-billing agency whereby the meter readings of the seven municipalities would be combined monthly, billed to relator as one account, and prorated to each municipality, and the amounts would be collected from each municipality and paid to respondents by the relator.

We do not determine the power of the cities and villages to delegate the power here recited to the relator.

The rate schedule provides that power shall be available to an "electric utility system." The answer of the respondents alleges the fact to be that the term electric utility system means a legal entity capable of contracting valid and binding contracts, and possessing and operating electrical transmission and distribution equipment consisting of poles, lines, wires, transformers, switches, and related facilities, and retailing to the ultimate user and consumer; further that relator does not possess or operate any electrical transmission or distribution equip-

ment or facilities; and that it does not sell and does not propose to sell at retail to the ultimate user or consumer. In the absence of a bill of exceptions and under the rules above stated we are required to accept the facts to have been established as alleged.

It becomes obvious that the relator is not a customer entitled to a contract under the rate schedule involved.

Respondents are subject to the provisions of section 70-626.01, R. R. S. 1943. This section provides: "A public power district which is engaged in the generation and transmission of electrical energy shall be required to sell electrical energy at wholesale directly to any municipality or political subdivision in the state which is engaged in the distribution and sale of electrical energy when such municipality or political subdivision makes application for the purchase of electrical energy, provided such district has the requested amount of electrical energy available for sale, and the municipality or political subdivision agrees to make or pay for the necessary physical connection with the electrical facilities of such district."

The statute provides for sale "directly" to a "municipality." It does not show a legislative intent to require a public power district to sell indirectly to a municipality through a group or association of municipalities, as relator asks it be required to do here.

The pleadings sustain the judgment entered. The judgment of the trial court is affirmed.

AFFIRMED.